UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,    )
                             )
        v.                   )   Docket No. 5:24-cr-00310-FB-1
                             )
TREVIN WAYNE MICHAEL BOONE,  )   San Antonio, Texas
                             )   July 11, 2025
        Defendant.           )
_____ )

TRANSCRIPT OF BOND REVOCATION HEARING
BEFORE THE HONORABLE HENRY J. BEMPORAD
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

FOR THE GOVERNMENT:
Christopher Kirk Mangels
United States Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, TX  78216

FOR THE DEFENDANT:
Marina Thais Douenat
Federal Public Defender's Office
300 Convent Street, Suite 2300
San Antonio, TX 78205

COURT RECORDER:  FTR Gold

TRANSCRIBER:
CHRIS POAGE, CRR, RMR
United States Court Reporter
262 West Nueva, Suite 1-426
San Antonio, TX  78207
Telephone:  (210) 244-5036
chris_poage@txwd.uscourts.gov

Proceedings reported by electronic sound recording.  Transcript produced by computer-aided transcription.

*(3:07 p.m.)*

THE COURT:  Good afternoon.  Please be seated. Calling case number SA:24-CR-310, United States of America v. Trevin Boone.  Let me get announcement of counsel, starting with counsel for the government, please.

MR. MANGELS:  Good afternoon, Your Honor.  Christopher Mangels for the United States.  Ready.

THE COURT:  All right.  Good afternoon.

MS. DOUENAT:  Good morning, Your Honor.  Marina Douenat.  I mean, I'm ready.  I'm not ready to proceed on just the information we got today.  That's new.

THE COURT:  Yeah.

MS. DOUENAT:  And I want to explore that a little bit more.  I'm getting a time line about it.  And I just received a picture of this today.

THE COURT:  That's fine.

MS. DOUENAT:  But I can address the other matter.

THE COURT:  That's fine.  I will -- I mean, I'm -- if we need to, I'm happy to address that matter.  But the main matter I wanted to address was the petition that's before me at this time.

MS. DOUENAT:  Okay.

THE COURT:  Yeah.  On that issue, I have a revocation petition before me.  This is -- in the petition it says there's some violations of the conditions of release and recommends

revocation.  On these matters, as we've talked about before, there's two different things I have to decide.  One is, are there conditions I can -- was there a violation?  Excuse me.  And if so, are there conditions I can set that would still allow Mr. Boone to be on bond, that I believe he could follow?

On this matter, I first want to issue about -- talk about whether there was a violation, and then I can turn to the question of what to do about it.  And I'll start by talking to Ms. Douenat, as I typically will in these circumstances, to ask, is this a situation where the circumstances are -- this is -- this incident at the house with Mr. Boone's mom, are those things contested, or is this more of a question of what can we do about those -- that situation?

MS. DOUENAT:  So I guess there has been -- so there is confusion about what specifically happened.  I know the mother said he had anger issues.  And so I'm going to be honest with the Court.  My understanding is that Mr. Boone was upset because his mother was drinking, and she was upset because he was telling her not to drink.  And so then the police was called.

So I don't -- I don't know, except for the fact that the place was not becoming a suitable place for him to stay anyway --

THE COURT:  Right.

MS. DOUENAT:  -- whether there is anger issues because

of his mother drinking and she's not supposed to be drinking because she's sober.  I know --

THE COURT:  And this has led to other issues in the case --

MS. DOUENAT:  Right.

THE COURT:  -- as I remember, with --

MS. DOUENAT:  Right.

THE COURT:  -- the --

MS. DOUENAT:  With the boyfriend.

THE COURT:  The boyfriend.

MS. DOUENAT:  Correct.

THE COURT:  George -- I can't remember his last name.

MS. DOUENAT:  Cronin.  Yes.

THE COURT:  Conan.  Okay.

MS. DOUENAT:  It was Cronin.

THE COURT:  Okay.  Yeah.

MS. DOUENAT:  So, Your Honor, I mean, I do know that she did have -- I did talk to her.  And, you know, when she -- when I talked to her, she was, like, very upset because she felt like she had to call the police because she's been a prior victim of abuse.  He did not assault her.  He did not touch her.  But she doesn't like to be yelled at, and that just triggers her, and that's why she called the police.  I didn't -- I didn't say, you didn't have to call -- I mean, I just was wanting to know what happened.

THE COURT:  Right.

MS. DOUENAT:  And then -- and then she had been evicted because the police -- because then the marshals had come and arrested him.  And so her relationship with Mr. Cronin is now not.  They don't have a relationship anymore because they got evicted.  And so she is living with someone else, not her residence, not her home.

THE COURT:  Okay.  So --

MS. DOUENAT:  So it's unsuitable.

THE COURT:  Right.

MS. DOUENAT:  That's an unsuitable place to be --

THE COURT:  All right.

MS. DOUENAT:  -- anyway.

THE COURT:  Given those circumstances, without making -- I'll accept that proffer, unless there's an objection from Mr. Mangels.  It does seem to me like the current conditions do not work.  And so --

MS. DOUENAT:  No, they don't.

THE COURT:  -- the question is, are there any other kind of conditions I can set?

MS. DOUENAT:  Right.

THE COURT:  And, Mr. Mangels, if it's okay, I'm going to check with Ms. Douenat, what she would propose, and then I want to hear from you about it.

MR. MANGELS:  That's fine, Your Honor.  Thank you.

MS. DOUENAT:  I mean, I would have proposed halfway house, Your Honor, on this particular situation, but I know there's another violation potentially coming.  So --

THE COURT:  Oh, from this picture, you mean?

MS. DOUENAT:  Yes.

THE COURT:  Oh, all right.

MS. DOUENAT:  I mean, I don't know.  But, I mean, the bottom line is, I was going to come in here today and say, Your Honor, I mean, he has no place to go.

THE COURT:  Yeah.

MS. DOUENAT:  So I know that he was at the halfway house.  I do think that he needs counseling, and he was doing well with counseling.

THE COURT:  That was my understanding from what we talked about before.

MS. DOUENAT:  Because he was going to his counselor, my understanding.  I don't know if there's been any other issues --

THE COURT:  All right.

MS. DOUENAT:  -- with counseling, but he was attending his counseling in Beaumont and --

THE COURT:  All right.

MS. DOUENAT:  -- I thought that was -- the (inaudible) counseling at least was very helpful.  I know he was also on medication and --

THE COURT:  Yeah.  Do you have a sense of what those medications were or --

MS. DOUENAT:  Well, he's on an anxiety medication to sleep at night.  He had been on another medication, which he's not on anymore.  He's only on the sleep medication now.

THE COURT:  Is he receiving that in custody at this time?  Okay.  All right.

MS. DOUENAT:  Yeah.  He is receiving the sleep medication.

THE COURT:  Your client is saying yes.  Okay.  Very well.

MS. DOUENAT:  Yes.  He is getting that.  Because I asked him, when he got to Karnes, if he was receiving it.  And they gave him, in Beaumont, this medication to sleep.

THE COURT:  I see.  All right.

MS. DOUENAT:  They removed the other medication that he was taking while on the outside.  And I think it's because it's -- you know how jails don't prescribe certain medications that are addictive, I think.  And it was one of those triplicates for --

THE COURT:  Okay.

MS. DOUENAT:  -- a mood stabilizer.  He was on a mood stabilizer as well.

THE COURT:  I see.  All right.

MS. DOUENAT:  And you were on two other medications,

right?  And then they -- when you got arrested in Beaumont, they removed you and just left you with the sleep medication?

THE COURT:  All right.

MS. DOUENAT:  So I did find that out.

But for those reasons, I was going to -- I was going to say, because I know there's a psychiatrist in -- at Yucca Street at the halfway house right around the corner -- or in the same building, somewhere around there.

THE COURT:  There can be some co-occurring treatment then?

MS. DOUENAT:  Right.

THE COURT:  I got you.

MS. DOUENAT:  The co-occurring treatment, just so he can at least -- because he was doing better --

THE COURT:  All right.

MS. DOUENAT:  -- with that.  I know he does suffer from bipolar, and he does suffer from severe depression.  And it seems like -- it's also hereditary because it seems like his mom suffers from that as well.  So --

THE COURT:  Yeah.  Got you.  All right.

MS. DOUENAT:  So that was the only --

THE COURT:  Well, let me --

MS. DOUENAT:  -- only suggestion I was going to make.

THE COURT:  All right.  Let me -- let me check on that before we get into this other issue that was -- you mentioned,

Ms. Douenat. I'm going to hear from all of the parties.

First, let me check with pretrial services on a couple of those issues that you mentioned, Ms. Douenat, and then I want to hear from Mr. Mangels.

First, with pretrial services, on the paperwork that I had in front of me now, there was a -- I mean, it sounded like the mother had recommended that Mr. Boone go to the halfway house. And I don't know if there's space available at the halfway house, Ms. Kopsie (inaudible) something you've investigated.

PRETRIAL OFFICER: Yes, Your Honor. So, first of all, pretrial will recommend revocation of bond at this time. But to answer your question, on Tuesday, we got the update on bed space available (inaudible) drug treatment program and then also Crosspoint. And I was told that there were a couple of beds available at Crosspoint halfway house.

THE COURT: Okay.

PRETRIAL OFFICER: But Crosspoint does require the defendant's mental health to essentially be stabilized before they will accept them --

THE COURT: All right.

PRETRIAL OFFICER: -- at this time.

THE COURT: All right. Do you have some reason to believe that right now, with the medication -- sleep medication, otherwise, that Mr. Boone's mental health is not stable?

PRETRIAL OFFICER:  So, I mean, we do have general concerns regarding his mental health, especially given the photograph that was posted online.  However, I know that when he was in San Antonio last, at the halfway house, he was receiving psychiatric services through Crosspoint, and he was receiving a mood stabilizer, Trileptal, as well as the sleep medication, Hydroxyzine.

MS. DOUENAT:  Right.  And that's what he's on right now, is the Hydroxyzine.

PRETRIAL OFFICER:  So, I mean, we have those concerns, where his mental health is, especially with the photograph and then, you know, not having all of the medication that he's had previously.

THE COURT:  All right. Very well.  Thank you.

I think that was the only questions I had for you.  And then, with regard to this photograph, I think you sent me an email.  But you provided it to both parties at this point?

PRETRIAL OFFICER:  I did, Your Honor.

THE COURT:  All right.  Very well.

PRETRIAL OFFICER:  (Inaudible).

THE COURT:  Great.  Thank you.

All right.  Mr. Mangels, let me turn to you.  First, on the issues I had in front of me now, I would be interested what your view is.  I had this sense that you may not have been opposed to that -- the proposal that Ms. Douenat had made prior

to this photograph, but that maybe the photograph is changing your mind.  I just don't know what your view is.

MR. MANGELS:  Well, Your Honor, honestly, we do have concerns, and we are requesting bond be revoked at this point --

THE COURT:  All right.

MR. MANGELS:  -- notwithstanding the photograph. Again, we do definitely have concerns about the photograph, but let's put that aside for the moment.  Even if I were not to consider that, I would still be requesting the bond be revoked. This is not the first issue that Mr. Boone has had in relation to following the pretrial conditions in this case.

And specifically, I want to bring the Court's attention to the fact that it's not just the fact that he's having these difficulties with his mom.  I don't know what the situation was between him and his mom at the house.  My bigger concern is that law enforcement was called, and one of the very clear conditions of his release is that if he has contact with law enforcement, he's supposed to notify pretrial services.  He failed to do so.  So that, in and of itself, regardless of, you know, whatever the situation that led to law enforcement being called to the house, that is the violation that -- that's another violation that we're concerned about and we feel in and of itself would be sufficient to justify revocation in this case.

If bond is revoked, we would also ask that the -- I believe it's $30,000 -- be forfeited. Again, I understand the defendant's probably indigent, so that most of that, if not all of it, would be set aside. But that would be our request at this time.

THE COURT: All right. Very well.

MS. DOUENAT: And, Your Honor, as far as responding on the -- on the law enforcement situation, I did request that. I did ask Mr. Boone about that. And my understanding is that -- and I have not confirmed this with law enforcement because I wasn't able to find out who the officer was who showed up at the house because we don't have a police report yet. And I don't know if pretrial has a police report about it.

But my understanding is that the police did show up. Mr. Boone explained the circumstances about what happened and asked about whether this was going to be reported, was there going to be a police report, because he would have to explain there was contact with law enforcement.

And the officer said, well, there's not going to be a police report. And this is -- this is just -- we're not -- we're not going to be reporting this.

And so he felt like he didn't have to report this to pretrial because his understanding was that this wasn't, per se, contact with law enforcement, which I explained to him, that's not the case.

But under his understanding, because he spoke to the police officer about this and explained to him that that had -- there was already had -- they already had one previous call before that with an incident.  But I'm just letting the Court know, this is -- this is -- I mean, I haven't been able to, at least, speak to the law enforcement officers or look if there is -- I know there was -- there was going to be a request for the police report, but I don't know if there --

THE COURT:  Yeah.  It looked like that, actually, the probation officer out there in the Eastern District -- I think it's Eastern District.  I don't remember.  Maybe Southern District -- Officer Pellum (phonetic) is the one who was going to try to get the --

MS. DOUENAT:  Right.  And I don't know if that was received or not.

THE COURT:  -- report.  But I don't know if they had received it.

MS. DOUENAT:  Right.

THE COURT:  (Inaudible) seen it.

MS. DOUENAT:  So I was hoping to see that so I could address that but --

THE COURT:  All right.  With regard to this photograph, which is the other concern --

MS. DOUENAT:  It is a concern.

THE COURT:  -- I don't know if you have had a chance

to discuss this matter with Mr. Boone or if you'd like an opportunity to talk to him a little bit about it.  And let's just -- I mean, it is not a revocation matter that has been presented to me today, that he has -- for example, in possession of a firearm while on bond, which would be an extremely serious issue.  But it is something that I would consider in trying to figure out if there are conditions I can set.  So if you'd like to talk to him about it, I'm happy to give you a little time.

MS. DOUENAT:  So I do know this photo is old.  So this photo is not a photo that's new.  The problem is -- the concern is, the photo was picked and uploaded.

THE COURT:  Yeah.

MS. DOUENAT:  So did he do this, or didn't he do this? I don't know.  I did tell him about it today, in the courtroom. I just told him, I don't need you to tell me anything about it right now because I don't feel like this is a private space but --

THE COURT:  Right.

MS. DOUENAT:  And I would like to have client-attorney privileged communications with him on this.

THE COURT:  Uh-huh.

MS. DOUENAT:  So I would like a couple of days, Your Honor, just to at least be able to schedule a call with Mr. Boone on Monday and maybe talk to him about this.

THE COURT: Let me ask you this. Currently, Mr. Boone does not have a cellphone because he's in custody.

MS. DOUENAT: He -- right.

THE COURT: All right. Did he -- does he have one in his property there at Karnes? Do you know?

MS. DOUENAT: No, he doesn't.

THE COURT: All right.

MS. DOUENAT: He does not have a cellphone. He doesn't have money. No.

THE COURT: Well, I don't know. Okay. All right. Very well.

MS. DOUENAT: But yeah. No.

THE COURT: That was my -- thank you, Ms. Douenat. That was my other question I forgot to ask. But now I -- remind me, Ms. Kopsie, was this photo that was posted, do you know if it was posted from a computer, from a cellphone, how it was posted?

PRETRIAL OFFICER: I don't know, Your Honor. The only thing that was --

THE COURT: I mean, what social media or what -- how -- what was it posted on?

MS. DOUENAT: Facebook.

PRETRIAL OFFICER: So it was my understanding it was posted through Facebook. And that (inaudible) deputy U.S. Marshal that was assigned the warrant (inaudible) he's the one

that saw it.

THE COURT:  Okay.  But you don't know if he saw it on a computer or saw it on a phone or --

PRETRIAL OFFICER:  I believe he used his phone to access Facebook.

THE COURT:  Oh.  So he looked at it --

MS. DOUENAT:  He researched and saw it on Facebook.

THE COURT:  -- (inaudible) Facebook account --

PRETRIAL OFFICER:  Correct.

THE COURT:  -- on his phone.  Okay.  You see why I was asking.  I was just wondering how this thing got posted.  All right.  Got you.

MS. DOUENAT:  But it does -- it does show on Facebook that it was posted on May 22nd, 2025.

THE COURT:  Yes.

MS. DOUENAT:  So that was posted on May 22nd, 2025.  That picture was posted on his Facebook.

THE COURT:  All right.  Got it.  All right.  Very well.  Thank you.

Thank you, Ms. Douenat.  I think I see where I am with regard to this matter.  On the -- starting with the point that Mr. Mangels made, I agree with him.  Mr. Boone may have thought he didn't have to report to the law enforcement when he had contact, but he had to report to law enforcement when he had contact.  There's no doubt about that.  The Court finds there

is a violation on that, and there's no dispute.

So then the question becomes, in light of that and all the other circumstances that have been described, can I still set conditions of release that I believe Mr. Boone could follow that would reasonably assure the safety of the community and his appearance in court?

And despite all the difficulties Mr. Boone has had on bond, I believe there are conditions. The condition is halfway house.

I'm very concerned about this photo and posting photos of guns, but I'm going to solve that by having no cellphone, no contact, no computers. That means you're not going to be able to post anything. And we'll solve the issue that way.

You will also have to undergo mental health treatment, drug treatment as needed -- as necessary, though, I think all that can be outpatient. And that will allow you to stay out on bond at the halfway house, in that structured environment where you were, to my mind, successful before. Though, I mean, there were some issues along the way, the biggest problems you had were living at home because of troubled home life that is -- that's just the circumstance we're in. I still believe I can reasonably assure the safety of the community if you're in the halfway house. And if you're at the halfway house, you're here in town. And so I can reasonably assure that you would appear in court.

You've been through the halfway house before.  You know how to follow those conditions.  And that's the conditions that you'd have to follow.  So I believe that's appropriate in this case.  Though, I note the concerns of both pretrial services office and Mr. Mangels.  I'm very concerned, and I may want to know more about why on earth this photo got posted.

However, I wanted to check with the parties.  I think this case is set for sentencing --

MS. DOUENAT:  August 7th.

THE COURT:  -- August 7th.

MS. DOUENAT:  Yes, Your Honor.

THE COURT:  All right.  So, I mean, these are issues that are now going to be up in front of Judge Biery.

MS. DOUENAT:  Yeah.

THE COURT:  And this may have to be addressed by him at that time.

Any -- let me go around the room.  Any questions from Ms. Kopsie as to conditions of release, additional conditions I might set?

PRETRIAL OFFICER:  Yes, Your Honor.  So in addition to the ones that you mentioned and the original conditions imposed in this case, we would ask the Court to impose location monitoring, home detention, GPS, and with location monitoring, especially if Mr. Boone were to obtain employment --

THE COURT:  Yeah.

PRETRIAL OFFICER:  -- and things like that --

THE COURT:  I'm not going to require employment at this time --

PRETRIAL OFFICER:  Okay.

THE COURT:  -- given that sentence is so soon. However, if the halfway house is fine with it, I'm fine with location monitoring.

PRETRIAL OFFICER:  Okay.

THE COURT:  Do you know if they allow location monitoring?

PRETRIAL OFFICER:  They allow location monitoring, yes.

THE COURT:  Okay.  That's fine.  That's fine.

MS. DOUENAT:  I think they're stand-alone now, right? Like, you don't need a phone?

THE COURT:  Yeah.  That's the only concern, is that he doesn't have a phone.

PRETRIAL OFFICER:  So -- and what I would recommend with that, especially if he's going to be, like, leaving the halfway house to attend appointments in the community --

THE COURT:  That's the main thing.  Yes.  Uh-huh.

PRETRIAL OFFICER:  -- drug testing and everything, we -- I would ask that the Court allow him to use a non-internet-capable device that can be monitored.  And it's called a say (phonetic) phone.  There's no internet capability.

There's no social media ability.

THE COURT: All right.

PRETRIAL OFFICER: It's just for making phonecalls, and it would be a way for him to maintain communication with us and the halfway house.

THE COURT: Is this something that pretrial would provide? I don't know if he has any funds to do that.

PRETRIAL OFFICER: We can. And if he obtains employment, we could assess him a small fee --

THE COURT: Yeah. That's fine.

PRETRIAL OFFICER: -- towards that. Okay.

THE COURT: Yeah. Well, I'm fine with that. He can have -- I will amend it to have the non-internet phone. It's the internet that I was concerned about and social media. But that will be -- with location monitoring is fine. I'm not going to require that Mr. Boone look for work at this time. He's got sentencing coming up, and I want him to go to his treatment. That's the thing that's most important.

PRETRIAL OFFICER: Okay.

THE COURT: Let me go to you, Mr. Mangels. I know you may object to my determination, but you may want to recommend some other conditions, and I'd be happy to consider them.

MR. MANGELS: No, no other conditions, Your Honor. We would request a stay of Your Honor's ruling to give us an opportunity to appeal the matter to the district court.

THE COURT:  All right.  Well, Mr. Boone cannot be released until -- what was the -- did you say it was Tuesday --

PRETRIAL OFFICER:  There is bed space available --

THE COURT:  Now?  Okay.

PRETRIAL OFFICER:  I'm not sure how (inaudible) --

THE COURT:  All right.  Well, then what I'll do is I will set this case for bag and baggage on Tuesday because Mr. Boone would have to come back here to get fitted with the monitor and then go to the halfway house.  But I'll delay that until Tuesday to see if you want to appeal that decision.

MR. MANGELS:  That should be fine, Your Honor.  Thank you.

THE COURT:  All right.  Very well.  If there is an appeal, then I would stay it further.  But I'm -- but I'm -- absent an appeal, it's going to go forward.

MR. MANGELS:  Yes, Your Honor.

THE COURT:  And I'll let you consult with your colleagues.

MR. MANGELS:  Thank you, Your Honor.

THE COURT:  All right.  Ms. Douenat, these are more stringent conditions than you had recommended.  I don't know if you have any objection.

MS. DOUENAT:  No, Your Honor.

THE COURT:  All right.  Mr. Boone, I'm giving you another chance even though the government doesn't want me to,

as you can tell.  You have to comply with these conditions. The more violations before sentencing in the case is a bad situation for you.  You understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Very well.  Do you agree to follow the conditions that I set?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Very well.

That concludes this hearing.  We're in recess.  Thank you.

MS. DOUENAT:  Thank you.

* * *

*(3:26 p.m.)*

-oOo-

I, court approved transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


Date:  7/29/2025      /s/ Chris Poage
                      Approved Transcriber